SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
STEVEN KOGUT,

                Plaintiff,

    -against-

[redacted], a/k/a [redacted],
a/k/a [redacted], a/k/a [redacted],
a/k/a [redacted], a/k/a [redacted], a/k/a
[redacted], a/k/a [redacted]
[redacted] and JOHN DOE and
JANE DOE, the names being fictitious, being
accomplices of the named defendant herein,

                Defendant(s)
-------------------------------------------------------------------X

Index No:
Date Purchased:

Plaintiff designates
NEW YORK COUNTY
as Place of Trial

Basis of Venue:
Residence of Plaintiff

Plaintiff resides at:
99 Jane Street
New York, New York 10014

To the above named Defendant(s):

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: September 29, 2016
       New York, New York

                                  DAVID HOROWITZ, P.C.

                                  By: [signature]
                                  CHRISTOPHER S. JOSLIN
                                  171 Madison Avenue, Suite 1300
                                  New York, New York 10016
                                  (212) 684-3630

Defendant's Address: [redacted]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
STEVEN KOGUT,

        Plaintiff,

-against-

[REDACTED] a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED] and JOHN DOE and JANE DOE, the names being fictitious, being accomplices of the named defendant herein,

        Defendants.

------------------------------------------------------------------X

**VERIFIED COMPLAINT**

## COMPLAINT

Plaintiff, STEVEN KOGUT, complaining of the defendants, by his attorney DAVID HOROWITZ, P.C., respectfully alleges:

## INTRODUCTION

1. Plaintiff STEVEN KOGUT, (hereinafter "Plaintiff" or "Kogut") by his attorneys DAVID HOROWITZ, P.C. hereby seeks damages for defamation, damages sustained due to defendants' on going pattern of racketeering activity (RICO), physical damages as a result of being physically assaulted by defendant and physical injuries as having been given a sexually transmitted disease by the defendant.

## PARTIES

2. At all times material, Plaintiff STEVEN KOGUT is an individual residing in the State of New York.

3.  At all times material, Defendant, ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, a/k/a ███████████, is an individual residing in the State of ███████████.

4.  Plaintiff is a real estate business owner and real estate investor.

5.  Defendant is unemployed. Defendant is a self-proclaimed financial writer, masseuse, escort, charity organizer, model, actress, screenwriter, novelist, internet innovator and consultant.

## NATURE OF THIS ACTION

6.  On or about October 20, 2013, Plaintiff KOGUT and Defendant met in person at CRAFT for drinks and dinner after an initial introduction online. After their first face to face encounter the relationship between Plaintiff and Defendant became romantic.

7.  Upon information and belief, on or about May 1, 2014, Defendant moved into Plaintiff KOGUT's loft apartment located at 487 Greenwich Street, Apt. 3A, New York, New York. Defendant's concealment of her prior schemes to defraud high net worth men made it impossible for Plaintiff to know the details of many of her past unlawful acts, the details of which are set forth herein.

8.  Shortly after Defendant moved into Plaintiff's apartment, the relationship began to deteriorate. After the Defendant moved in Plaintiff began to grow suspicious of the Defendant.

9.  Specifically, on or about May 7, 2014, Plaintiff confronted Defendant regarding her attending a "match making" event despite that fact that she had moved in with Plaintiff. Plaintiff asked to see Defendant's phone regarding the invitation to the match making event.

Defendant handed over the phone to Plaintiff to show him the event. When Plaintiff asked why she was attending such an event, Defendant lost her temper and attacked Plaintiff; scratching Plaintiff and causing him significant bruising and pain.

10. On or about June 9, 2014, while attending a "Love Heals" event, Defendant received a solicitation on her phone from one of her escort clients and was asked for a meet in exchange for an "envelope."

11. Plaintiff's suspicions continue to grow when Plaintiff learned that Defendant claimed to have founded a charity for children with cancer: Bright Lights Foundation for Children with Cancer. The mission of Bright Lights Foundation for Children with Cancer is to: [provide] "Medical relief for children and adults, inspiring people with health and hope. We are dedicated to helping children and adults, specifically in terms of contributing to their medical assistance in times of need. Our motto is: Inspiring People with Health & Hope." Defendant held herself out to Plaintiff, and the public, as being the Founder and President of the Bright Lights Foundation for Children with Cancer: organizing charity events and collecting charitable donations. Prior to meeting Plaintiff, Defendant held a "so called" charity event on or about July 31, 2012, at Hudson Terrance. After becoming romantically involved with Defendant, Plaintiff became aware that Defendant was enlisting the help of unpaid interns to assist her with, among other things, invitations and the compiling of guest lists for her phony charity. Defendant placed an ad on the "NYU Internships Available" website and procured various NYU students to work for her as unpaid interns in order to organize and solicit attendees and contributions. Plaintiff began to wonder about the legitimacy of Plaintiff's charity.

12. On July 16, 2014, Defendant held a "charity" event at Hudson Terrace.

13. Upon information and belief, the Defendant received contributions by check, cash, credit card and PayPal, of all which it is believed Defendant pocketed. Not a single dime is believed to have been given to children suffering from cancer. Unbeknownst to the Plaintiff herein, Defendant used Plaintiff's home address to receive donations for Bright Lights Foundation for Children with Cancer.

14. Bright Lights Foundation for Children with Cancer was never registered as a charitable organization or as a nonprofit organization with the State of New York or any other state. In other words, Bright Lights Foundation for Children with Cancer was a ruse created by Defendant for the sole purpose of lining her own pockets.

15. Plaintiff grew even more suspicious of the Defendant, when the Defendant began to brag about extorting Five Million Dollars ($5,000,000.00) from Michael Gabelli, (hereinafter "Gabelli") the son of Mario Gabelli, founder, chairman, and CEO of Gabelli Asset Management Company Investors by falsely alleging that Michael Gabelli had raped her. Upon information and belief, the settlement came in two parts: the first payment upon execution of the non-disclosure agreement, the second payment to be made in the summer of 2014.

16. Defendant told Plaintiff: that on or about August 8, 2011, Defendant met Gabelli at a Business Financial Networking Night; that Defendant and Gabelli exchanged business cards and Gabelli discussed hiring Defendant; that Gabelli emailed Defendant about scheduling a further meeting to discuss hiring Defendant and that a further meeting did indeed take place. Upon information and belief, Defendant had already hatched her plan and scheme to defraud Gabelli.

17. Defendant told Plaintiff that on or about August 15, 2011, Defendant along with another individual met Gabelli at the SoHo House Roof Pool Lounge. Defendant, her

4 | Page

accomplice and Gabelli met for approximately 15 minutes. Defendant and Gabelli left the SoHo House and went to Defendant's apartment located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Upon information and belief, Defendant and Gabelli engaged in consensual sex. In an effort to extort money for Gabelli, Defendant fabricated a claim that Gabelli followed her home from the SoHo House, raped Defendant, assaulted Defendant by slapping her and threatened to kill Defendant if she called the police. Defendant boasted of her targeting and extortion scheme and the success she had in blackmailing Gabelli into paying her Five Million Dollars ($5,000.000.00) by threatening Gabelli with a civil lawsuit. Defendant claimed to be Gabelli's "worst nightmare in court" because Defendant was Ivy League educated-- graduating from Columbia University with a degree in creative writing and was a one time beauty pageant contestant. In other words; the perfect witness.

18. By July of 2014, the relationship between the Plaintiff and Defendant continued to sour. On July 16, 2014, Plaintiff returned home from a Bright Lights Foundation for Children with Cancer event hosted by Defendant. Plaintiff was tired and retired for the evening. Defendant came into the bedroom and demanded sex. Plaintiff refused. Defendant jumped on top of the Plaintiff-- straddling him and demanding sex. Plaintiff pled with the Defendant to get off of him and that she was hurting him. Defendant's pleas did not fall on deaf ears, as Plaintiff's pleas to the Defendant to stop were overheard by his daughter, Jaclyn and her boyfriend Jason, who were in the adjoining room. Defendant became more enraged and physically assaulted the Plaintiff: poking him in the stomach and grabbing him by the left bi-cep and right wrist which caused bruising and substantial pain.

19. On the following morning of July 17, 2014, Defendant was confronted by Plaintiff about her charity not being registered. Defendant became angry and accused Plaintiff

and his family of slander. Plaintiff's daughter, Jaclyn Kogut began to videotape Defendant arguing with Plaintiff about the nature of her charity. Realizing that she was being videotaped, Defendant violently grabbed Jaclyn's cell phone; ripping it from her hands and demanding that Jaclyn stop videotaping her. Defendant then assaulted Jaclyn by pushing her which caused Jaclyn to spill hot coffee upon herself. Jaclyn then demanded that Defendant leave her father's apartment, which she finally did, but only after repeated pleas by Plaintiff and his daughter to leave. Defendant only left the apartment when she realized that the police were called and on their way to Plaintiff's apartment. A domestic incident report memorializing the aforementioned events was filed by the New York City Police Department. Later that day, Defendant showed up at Plaintiff's apartment accompanied by five uniformed New York City Police officers to retrieve some of her personal belongings. Defendant was advised by the uniformed officers not to return to Plaintiff's apartment unless she was accompanied by uniformed officers from the New York City Police Department. Defendant appeared two more times that day at Plaintiff's apartment wanting to remove her personal belongings. Plaintiff refused to give her access to his apartment unless she was accompanied by uniformed officers from the New York City Police Department.

20.     On July 18, 2014, Plaintiff awoke at approximately 7:15 am, left his bedroom to go make coffee, only to find the Defendant in the company of male, known to Plaintiff as Chris Lukas. Defendant was by his desk and file cabinets. Defendant was rummaging through Plaintiff's personal document; dumping documents on his desk. Plaintiff demanded that Mr. Lukas leave his apartment. Plaintiff then called 911. In the meantime, Defendant threatened Plaintiff's daughter. While Plaintiff was on the phone with the 911 dispatcher, Defendant fled the apartment. The police arrived and the Defendant was placed under arrest and charged with

three counts of Assault in the Third Degree and one count of Harassment in the Second Degree. A domestic incident report memorializing the aforementioned events was filed by the New York City Police Department. Orders of protection were issued against the Defendant to refrain from any contact or communication of any kind with Plaintiff and his family.

21. In early August of 2015, Plaintiff received a mysterious e-mail from the Derek Smith Law Group, PLLC requesting that Plaintiff contact his office regarding allegations made by his client, the Defendant herein, against the Plaintiff. The emailed further requested that Plaintiff contact Mr. Smith, Esq., in an effort to amicably resolve Defendant's claims against Plaintiff. Plaintiff did not respond to Mr. Smith's email. Thereafter, on August 6, 2015, The Derek Smith Law Group, PLLC wrote to Plaintiff advising that the firm had been retained by the Defendant in connection with multiple claims against Plaintiff for sexual harassment, sexual assault and retaliation. Enclosed with the letter from The Derek Smith Law Group, LLC was a proposed complaint setting forth a detailed recitation of the facts and causes of action being asserted against Plaintiff and a request that Plaintiff contact Mr. Smith, Esq. in an effort to resolve the claims without filing the complaint and further litigation. Plaintiff did not respond to the letter or acknowledge the fallacious claims contained in the complaint. Plaintiff would be contacted again by the Derek Smith Law Group, PLLC; this time by Mr. Smith, Esq. personally. Mr. Smith called Plaintiff inquiring whether the matter could be resolved rather than commencing a law suit. Plaintiff responded that he would not be blackmailed.

22. On ███████████ Defendant filed a lawsuit against the Plaintiff in the United States District Court ████ District of New York alleging, among other things, sexual harassment, sexual assault and retaliation.

7 | Page

23. Upon information and belief, The New York Post is an American daily newspaper, primarily distributed in New York City and its surrounding area. Upon information and belief The New York Post is the 13th-oldest and seventh-most-widely circulated newspaper in the United States.

24. On October 2, 2015, Defendant maliciously, and without cause, launched a vicious attack against the Plaintiff by publishing in the New York Post that, "he [Plaintiff] would force her [Defendant] to have sex with him, threaten to kill her, pull her around the apartment by her nipples and force her to watch violent porn" and beat her. Defendant falsely claimed that, "I [Plaintiff] want you to suffer like Hitler made people suffer," notwithstanding the fact that Plaintiff is the son of parents, both of whom survived the Holocaust. Defendant's defamatory remarks were made with actual malice; Defendant stated to the New York Post that Plaintiff, "threw her down a flight of steps in their building" and that Plaintiff boasted that he [knew] "how the police work. I get the police. I have experience with cops and how to press charges" and that I'll punch myself in the eye and I'll blame you." Defendant referred to Plaintiff as a "monster."

25. Because Defendant's defamation of Plaintiff has been widely disseminated throughout the world, her remarks were also likely and possibly intended to hold Plaintiff up to ridicule in his business relationships as a real estate business owner and real estate investor.

26. Defendant's defamatory remarks have caused the Plaintiff considerable mental and emotional distress.

27. By reason of the defamatory remarks made by Defendant and published by the New York Post, Plaintiff has been damaged by loss or real estate investment opportunities.

28. Defendant's intentional and per se defamation of Plaintiff caused him to suffer, *inter alia*, gross impairment of his good name, public embarrassment, humiliation, impairment to his professional reputation, public impairment of his abilities and integrity, anxiety, emotional upset and public ridicule.

29. As a result of Defendant's defamatory remarks, Plaintiff has been damaged in an amount to be determined at the time of trial.

## A FIRST CAUSE OF ACTION
### (Gender Motivated Violence Protection Act)

30. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

31. New York City Administrative Code § 8-903 provides : 1. "Crime of violence" means: an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. 2. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

32. New York City Administrative Code § 8-904 provides: A Civil Cause of Action. Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section § 8-903 of this

chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief:

1. compensatory and punitive damages;

2. injunctive and declaratory relief;

3. attorneys' fees and costs;

4. such other relief as a court may deem appropriate.

33. <u>New York City Administrative Code§ 8-905 provides</u>: A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. If, however, due to injury or disability resulting from an act or acts giving rise to a cause of action under this chapter, or due to infancy as defined in the civil procedure law and rules, a person entitled to commence an action under this chapter is unable to do so at the time such cause of action accrues, then the time within which the action must be commenced shall be extended to seven years after the inability to commence the action ceases.

b. Except as otherwise permitted by law, nothing in this chapter entitles a person to a cause of action for random acts of violence unrelated to gender or for acts that cannot be demonstrated, by preponderance of the evidence, to be motivated by gender as defined in § 8-903.

c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

34. Defendant's conduct violated the sections as set forth herein and is civilly liable under § 8-903 et seq., and constitutes crimes of "violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act.

35. As a result of Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## A SECOND CAUSE OF ACTION

### (Defamation)

36. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

37. By reason of the foregoing, Defendant's willful and malicious defamatory statements about the Plaintiff constitute libel and libel per se for which the Defendant is answerable to the Plaintiff for damages under New York State Law.

38. As a result of Defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## A THIRD CAUSE OF ACTION

### (Federal Civil RICO, 18 U.S.C. §1962(c))

39. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

40. Defendant violated RICO and Plaintiff was injured as a result.

41. Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961 (3).

42. Defendant and her accomplices, yet to be known, violated 18 U.S.C. §1962(c) by the acts described in the prior paragraphs.

43. **The Enterprise**. Defendant and her accomplices constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There are other members of the enterprise who are unknown at this time.

44. **Pattern of Racketeering Activity**. Defendant and her accomplices, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961 (1 ), §1961 (3), and § 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants' had the specific intent to engage in the substantive RICO violations alleged herein.

45. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(1)(B), have been alleged above. Defendants each committed at least two such acts or else aided and abetted such acts; to wit the Gabelli extortion scheme and the Kogut extortion scheme. Other predicate acts are presently unknown.

46. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was

12 | P a g e

repeated conduct during a period of time beginning in approximately 2000 and continuing to the present, and there is a continued threat of repetition of such conduct since 2000.

47. **Predicate Act: Use of Mails and Wires to Kogut in Violation of 18 U.S.C. §§1341 and 1343**. Defendant and her accomplices committed acts constituting indictable offenses under 18 U.S.C. §§ 1341and 1343 in that they devised or intended to devise a scheme to defraud Kogut or to obtain money from Kogut by means of false or fraudulent pretenses, representations or promises. For the purpose of executing their scheme or artifice, Defendant and her accomplices caused delivery of various documents and things by the US. mails or by private or commercial interstate carriers, or received such therefrom. Defendant and her accomplices also transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals. The acts of Defendant and her accomplices set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendant's scheme or artifice.

48. **Predicate Act: Transport and Receipt of Stolen Money in Violation of 18 U.S.C. § 2314 and 2315**. Defendant and her accomplices committed acts constituting indictable offenses under 18 U.S.C. §§ 2314 & 2315 that having devised or intended to devise a scheme or artifice to defraud Gabelli and Kogut or to obtain money from Kogut by means of false or fraudulent pretenses, representations or promises, Defendants transported or caused to be transported in interstate or foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud. Defendants also committed acts constituting indictable

13 | P a g e

offenses under 18 U.S.C. § 2315 in that they received money in excess of $5000.00, which crossed a State or United States boundary after being stolen, unlawfully converted or taken. The acts of Defendant and her accomplices set forth above were done willfully and with knowledge that the money was stolen, converted or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendant and her accomplices scheme or artifice.

49. **Continuity of Conduct**. Defendant and her accomplices violations of state and federal law as set forth herein each of which directly and proximately injured Plaintiff and other high net worth men, constituted a continuous course of conduct spanning a period from approximately 2000 to present, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §1961(l) and (5).

50. Upon information and belief, Defendant and her accomplices have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

51. The unlawful actions of Defendant and her accomplices, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in his business. Plaintiff seeks an award of damages in an amount to be determined at the time of trial.

52. Plaintiff accordingly seeks an award of <u>three times</u> the damages he sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## A FOURTH CAUSE OF ACTION

### (Civil Conspiracy to Defraud)

53. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. In violation of 18 U.S.C. §1962(d), the Defendant and her accomplices each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged in paragraphs 7-28 above.

55. The conspiracy commenced at least as early as 2014 and is ongoing.

56. The conspiracy's purpose was to extort money from Kogut and other high net worth men to their own benefit.

57. Defendant and her accomplices each committed at least one overt act in furtherance of such conspiracy included misleading Plaintiff, Gabelli and other high net worth men as to the true purpose of their relationships.

58. Accordingly, Plaintiff seeks an award of three times the damages he sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

## A FIFTH CAUSE OF ACTION

(Negligence and a failure to warn)

59.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60.   Defendant had a duty to warn Plaintiff that she suffered from a certain malady.

61.   Defendant had a duty to advise Plaintiff that she suffered from a certain malady.

62.   Defendant breached her duties to the Plaintiff.

63.   Defendant contracted such malady because of Defendant's failure to warn and negligence in failing to advise Plaintiff.

64.   Plaintiff has been injured as a result.

## JURY DEMAND

65.   Plaintiff requests a jury trial on all issues.

WHEREFORE, Plaintiff demands judgment against Defendant and her accomplices in an amount to be determined at the time of trial plus interest, treble damages, punitive damages, attorneys' fees, costs and disbursements of this action, and for such other relief as the Court deems just and proper.

Yours, etc.,

_____
Christopher S. Joslin
DAVID HOROWITZ, P.C.
Attorneys for Plaintiff
STEVEN KOGUT
Office and P.O. Address
171 Madison Avenue, Suite 1300
New York, New York 10016
(212) 684-3630

## VERIFICATION

I, Steven Kogut, the undersigned am the Plaintiff in this action. I have read the annexed complaint and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief and to those matters, I believe them to be true.

I affirm the foregoing statements are true under penalties of perjury.

Dated: New York, New York
September 29, 2016

_____
Steven Kogut, Plaintiff

Sworn to before me this 29th day of September 2016.

_____

CHRISTOPHER JOSLIN
Notary Public, State of New York
No. 02JO6030741
Qualified in Nassau County
Commission Expires September 22, 20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
STEVEN KOGUT,

                                        Plaintiff,

                 -against-

[REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED], a/k/a [REDACTED] and JOHN DOE and JANE DOE, the names being fictitious, being accomplices of the named defendant herein,

                                        Defendants.

## SUMMONS AND VERIFIED COMPLAINT

### DAVID HOROWITZ, P.C.
*Attorneys for Plaintiff*
171 Madison Avenue, Suite 1300
New York, New York 10001
(212) 684-3630

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the court of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated:  September 29, 2016        Signature: _____
                                              Print Signer's Name: Christopher Joslin

TO:

                       Service of a copy of the within is hereby admitted,
Dated_____
                                       Attorney(s) For Plaintiff